IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **REGINA KELLEY, Individually and as** | § | |
| **Guardian and Next Friend of IMARI** | § | |
| **KELY and JADEN KELLEY and** | § | |
| **BYRON HALL** | § | |
| **V.** | § | No.  5:04CV137 |
| | § | |
| **CITY OF WAKE VILLAGE, TEXAS,** | § | |
| **TONY ESTES, Chief of Police of Wake** | § | |
| **Village, Texas, in his Individual and** | § | |
| **Official Capacity, OFFICER RUSSELL** | § | |
| **CRAWFORD, Police Officer of Wake** | § | |
| **Village, Texas, in his Individual and** | § | |
| **Official Capacity** | § | |

## MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636.  The Report of the Magistrate Judge which contain her proposed findings of fact and recommendations for the disposition of such action have been presented for consideration.  Plaintiff objected to the Report and Recommendation of the Magistrate Judge.  The Court conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

In a Report and Recommendation dated January 20, 2005, the Magistrate Judge recommended Plaintiff's due process claims be dismissed with prejudice. The Magistrate Judge further recommended Plaintiff's equal protection claims against Crawford and Estes in their individual capacities be dismissed with prejudice. Based upon Plaintiff's offer to dismiss without prejudice her negligence claims and the intentional infliction of emotional distress claim against Crawford, the Magistrate Judge recommended those claims be dismissed without prejudice.

Plaintiff filed objections to the Report and Recommendation. The Court reviewed Plaintiff's objections and ordered additional briefing on the objections from Plaintiff, including what facts Plaintiff would set forth evidencing that Officer Crawford had actual knowledge of a risk to Regina Kelley and that he deliberately disregarded it. Even though the Report and Recommendation did not include a discussion on qualified immunity, the Court also requested that Plaintiff include arguments as to Officer Crawford's qualified immunity defense to Plaintiff's equal protection claims against him in his individual capacity. Plaintiff filed the supplemental briefing as requested by the Court, and Defendants filed a response to the supplemental briefing.

On March 9, 2005, the Court adopted the Report and Recommendation as the findings and conclusions of the Court. Thus, the Court dismissed all of Plaintiff's claims with one exception: Regina Kelley's gender-based denial of equal protection against the City, Chief Estes, and Russell Crawford in their official capacities. Subsequently, Defendants moved for summary judgment on Plaintiff's remaining equal protection claims.

## REPORT AND RECOMMENDATION

In a Report and Recommendation dated January 10, 2007, the Magistrate Judge recommended Defendants' motion for summary judgment on Plaintiff's equal protection claims be granted and that Plaintiff's above-referenced cause of action be dismissed with prejudice. Plaintiff's equal protection claims are based on the alleged discriminatory impact of a policy or custom of Defendants to provide less police protection to victims of domestic assault than other assault victims. The Magistrate Judge noted that the Fifth Circuit in *Shipp v. McMahon*, 234 F.3d 907 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002), provided an objective standard to inform governmental

officials of the type of conduct that violates federal constitutional or statutory rights. *Shipp* held that a plaintiff must show discrimination against women is the "motivating factor" behind governmental policies that are alleged to be improper.

After outlining the summary judgment evidence and the applicable law, the Magistrate Judge first recommended Plaintiff's claim against Crawford, in his official capacity, be dismissed, noting it is undisputed that Crawford did not and could not serve as a policymaker. The Magistrate Judge then considered Plaintiff's claim against Chief Estes and the City of Wake Village. First, the Magistrate Judge assumed, *arguendo*, that Defendants had a policy, practice, or custom that had an adverse disparate impact on female victims of domestic violence. However, in making the assumption, the Magistrate Judge noted the weakness of the assumption, asserting Plaintiff's evidence fails to show that women were "systematically shortchanged or deprived of effective law enforcement response by the City's policies." *Beltran*, 367 F.3d at 302.

The Magistrate Judge then held Plaintiff failed to create a genuine issue of material fact regarding purposeful discrimination by Defendants. Specifically, the Magistrate Judge found nothing in the statistical records or the other evidence relied upon by Plaintiff permitting the necessary inference of an intent to discriminate against women. Finally, the Magistrate Judge noted that even if she were to find the evidence permits the necessary inference of an intent to discriminate against women, Plaintiff cannot establish causation.

## **PLAINTIFF'S OBJECTIONS**

Plaintiff filed objections to the Report and Recommendation. Plaintiff asserts there is sufficient evidence to establish she was injured by the custom, practice, policy, and procedure of the Wake Village Police Department ("WVPD"). Plaintiff also asserts the question of intent does not

lend itself to summary judgment because it is a question of fact. Specifically, Plaintiff objects to the Magistrate Judge's characterization of a February 28, 2003 temporary protective order as a temporary restraining order and asserts there is no information from which the Court can conclude that the responding officer properly exercised his discretion. According to Plaintiff, no information is given about why Jerod Kelley was not investigated, interviewed, or arrested even though Texas law requires the Wake Village Police Department ("WVPD") fill out a Family Violence DPS report in all cases which involve family violence.

Plaintiff contends the evidence shows the WVPD did not enforce protective orders which were in effect to protect Regina Kelley and her family. Plaintiff argues the evidence demonstrating Defendants' lack of enforcement seems to indicate a custom, policy, or practice of Defendants to provide less police protection to victims of domestic assault than other assault victims.

Regarding the Magistrate Judge's recommendation that there was insufficient evidence regarding whether discrimination against Plaintiff was a motivating factor, Plaintiff refers to the affidavits filed by Pam Bradley and Susan Kelley stating that they heard officers of the WVPD tell Regina Kelley that if she did not quit calling them, the Department of Human Services would take her children. Plaintiff asserts the fact the Department of Human Services was called after she was shot and placed in intensive care and her children were placed into foster care is further evidence of discrimination against Plaintiff.

### *DE NOVO* REVIEW

**A.     Applicable Law**

"The Equal Protection Clause of the Fourteenth Amendment prohibits a state from engaging in intentionally discriminatory conduct that has an adverse disparate impact on women unless the

state can show an 'exceedingly persuasive justification for that action.'" *See United States v. Virginia,* 518 U.S. 515, 530 (1996). In 1989, the Supreme Court decided *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989). "The main issue in *DeShaney* involved the plaintiff's substantive due process claim regarding the defendant's failure to remove timely the plaintiff, a minor-child, from his abusive father's custody." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001). However, in a footnote, the Supreme Court "provided pivotal language that has formed the foundation for contemporary Equal Protective challenges to law enforcement policies, practices, and customs toward domestic abuse." *Id.* The *DeShaney* court stated that the "State may not of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protective Clause." *DeShaney*, 489 U.S. at 189 n.3.

The same year *DeShaney* was decided, the Fifth Circuit addressed whether a plaintiff's claim based on police inaction and law enforcement policies and customs that allegedly treated victims of domestic assault differently from other crimes violated the Equal Protective Clause as contemplated in *DeShaney*. In *McKee v. City of Rockwall, Texas*, 877 F.2d 409 (5th Cir. 1989), the Fifth Circuit affirmed a district court's grant of summary judgment because the plaintiff failed to produce sufficient evidence to show the defendants adopted a policy, custom, or practice that treated victims of domestic assault differently from victims of other crimes. *Id.* at 416. The court left open the question of whether law enforcement policies that treat victims of domestic assault differently from victims of crimes discriminate against protected minorities within the meaning of *DeShaney*.

In *Shipp v. McMahon*, 234 F.3d 907 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001),

*overruled on other grounds* by *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002),[1] the Fifth Circuit addressed "whether a domestic abuse victim's complaint against a law enforcement agency and its officials for failure to effectuate an arrest, and for their policies, practices, and customs that discriminate against victims of domestic assault constitute intentional discrimination against women, and thus is cognizable under the Equal Protection Clause." *Id.* at 913. The Fifth Circuit adopted the equal protection test announced in *Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988). According to the test, Plaintiff must show: (1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic violence than to victims of other assaults; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom, or practice. *Shipp*, 234 F.3d at 913.

Even though the Fifth Circuit "has cautioned that the Equal Protection Clause should not be used to make an end-run around the *DeShaney* principle that there is no constitutional right to state protection for acts carried out by a private actor," *Beltran*, 367 F.3d at 304, the Fifth Circuit in *Shipp* provided an objective standard to inform governmental officials of the type of conduct that violates federal constitutional or statutory rights. *Shipp* held that a plaintiff must show discrimination against women is the "motivating factor" behind governmental policies that are alleged to be improper. Law enforcement officials "will only be liable for those policies . . . that are the product of invidious discrimination." *Shipp*, 234 F.3d at 914. The Fifth Circuit further noted that the "causation requirement will hold law enforcement officials accountable only for injuries that result from

---

[1] In *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002), the Fifth Circuit overruled that portion of *Shipp* concerning whether a right was "clearly established" for qualified immunity purposes and held that it is appropriate for a court to look at the law of other circuits when neither the Fifth Circuit nor the Supreme Court has spoken to that issue.

inaction or conduct pursuant to individual policies, customs, and practices" and not for "generalized harms that are not traceable to their conduct, policies, or customs" or for "those injuries that are solely attributable to the perpetrators of the underlying domestic assault." *Id.*

In *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004), a father murdered his wife and fifteen-year old daughter. The girl's grandmother filed a damage action against the City of El Paso and the 911 operator who allegedly mishandled the victim's initial emergency call. *Id.* at 301. The district court denied the 911 operator's motion for summary judgment on qualified immunity grounds. *Id.* On appeal, the Fifth Circuit first assumed, noting the weakness of the assumption, that the City's 911 classification policy had an adverse disparate impact on female victims of domestic violence. *Id.* at 305. The court elaborated on the weakness of the assumption, asserting "there was no statistical or even anecdotal evidence in the record that women were systematically shortchanged or deprived of effective law enforcement response by the City's 911 policies." *Id.*

The Fifth Circuit then held that the plaintiff had "made no showing that the City of El Paso assigns a lower level priority code to 911 family violence calls as the result of an effort to discriminate against women. Without evidence of discriminatory intent, [the plaintiff] cannot argue that the mere existence of such a policy violates the Equal Protection Clause." *Id.* Finally, the Fifth Circuit stated the plaintiff had failed to demonstrate a direct causal link between the victims' deaths and the City of El Paso's policy. *Id.* at 306. The plaintiff provided "no evidence that the police would have responded any more quickly if [the 911 operator] had coded the call as an injury to a child in progress." *Id.* The Fifth Circuit concluded that given the "dearth of evidence presented by Beltran in support of her case under *Shipp*, the facts of [the] case, even viewed in the light most favorable to the plaintiff, show no violation of [the plaintiff's] rights under the Equal Protection

Clause." *Id.* at 307.

In *McKee v. City of Rockwell, Texas*, 877 F.2d 409 (5th Cir. 1989), the plaintiff sued the City of Rockwall and certain police officers alleging that she had been injured as a result of the officers' refusal to make an arrest, and that this non-arrest was the result of a Rockwall policy that discriminated on the basis of gender. The officers and the city sought summary judgment, and the district court denied their motion. *Id.* at 410. In attempting to present some evidence of a policy which discriminates against women, the plaintiff produced an affidavit from her mother and statistics compiled from Rockwall's answers to the plaintiff's interrogatories. In her mother's affidavit, the plaintiff's mother stated that she had a conversation with Chief Beaty of the Rockwall Police Department following the assault on he daughter, and the Chief stated "his officers did not like to make arrests in domestic assault cases since the women involved wouldn't file charges or would drop them prior to trial." *Id.* at 411.

The Fifth Circuit found the plaintiff's evidence without probative weight. *Id.* at 415. Regarding the plaintiff's mother's affidavit, the Fifth Circuit stated a "dislike is not a policy. Officers may do things- indeed, they may be required by policy to do things - that they do not like to do." *Id.* The court further found that statistics submitted by the plaintiff did not "permit one to infer a disinclination to make arrests in domestic violence cases, mush less to infer a policy discouraging such arrests." *Id.* The court elaborated as follows.

> [T]he statistics do not correct for the wide variety of factors which might influence the likelihood that police would make an arrest: whether the assault was in progress when police arrived; whether a gun or knife had been used; whether the victim had suffered obvious physical injuries and required medical attention; and whether the victim refused to press charges when the police arrived. . . . [T]he statistics do nothing to suggest gender-based discrimination. The statistics do not indicate how many of the victims in the cleared assault cases were women, or how many of the

victims in the domestic violence cases were men.

*Id.* The Fifth Circuit concluded that the plaintiff failed to provide an evidence tending to show the officers' inaction was a consequence of discrimination against a protected minority, and the court reversed the district court's denial of the individual officers' summary judgment motion. *Id.* at 416. The court dismissed the appeal of the City for want of appellate jurisdiction. *Id.*

In *Jones v. Union County*, 296 F.3d 417 (6th Cir. 2002), the Union County Sheriff's Office failed to serve a protective order that was issued after repeated altercations between the former spouses. Two weeks later the ex-husband broke into his former wife's home and shot her. The plaintiff asserted an equal protection violation that the failure to serve the protective order or to train officers in the service of protective orders constituted deliberate indifference. The elements of a gender-based equal protection claim in the Sixth Circuit are identical to those in the Fifth Circuit as each Circuit has adopted the test announced in *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

In affirming summary judgment, the Sixth Circuit noted the lack of evidence identifying a policy that purposefully and intentionally discriminated against victims of domestic violence specifically or women generally. There was no evidence that victims of family violence received less protection than those of other crimes or that Union County discriminated purposefully with respect to the service of protective orders. *Jones*, 296 F.3d at 420-422.

Plaintiff must also show that the policymakers were motivated by a discriminatory purpose. In *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282 (1979), the Supreme Court defined "discriminatory purpose" as being "more than intent as volition or intent as aware of

9

consequences. It implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group." *Id* at 279. The Fifth Circuit imposes stringent standards when analyzing equal protection challenges to facially neutral policies. *See Beltran*, *Shipp,* and *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002).

In *Soto v. Flores*, 103 F.3d 1056 (1st Cir. 1997), a wife advised the police that her husband had threatened to kill her and sought his jailing for spousal abuse. The police admittedly violated their duty of confidentiality and informed the husband of his wife's complaints. Having done so, the police did not jail him or take steps to protect the wife or their children. Four days later he killed his two children and committed suicide. The First Circuit also adopted the *Watson* test and affirmed summary judgment. Specifically, the court found that even though the facts were horribly sad, there was no evidence to permit drawing the necessary inference of an intent to discriminate against women or whether the injuries were caused by the alleged custom or policy. *Id.* at 1063.

**B.     Discussion**

Even though the facts of this case are horribly sad, as in *Soto v. Flores*, 103 F.3d 1056 (1st Cir. 1997), there is no evidence to permit drawing the necessary inference of an intent to discriminate against women or whether the injuries were caused by the alleged custom or policy. The Court finds nothing in the statistical records permits the necessary inference of an intent to discriminate against women or whether the injuries were caused by the alleged custom or policy. Further, as noted by the Magistrate Judge, the Supreme Court has expressly held that enforcement of a domestic order is a discretionary function. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005). Here, Plaintiff has presented no evidence that any officer improperly exercised his discretion, or did so as

part of a discriminatory policy motivated by animus to women. Regarding Plaintiff's assertion that the WVPD officers did not comply with TCLEOSE training requirements, the Court agrees with the Magistrate Judge that Plaintiff failed to produce any official report from TCLEOSE to support this charge. Even if an officer was non-compliant, Plaintiff made no showing that it resulted from a discriminatory policy, that animus to women was a motivating factor, or that the alleged noncompliance caused Plaintiff's injuries.

Plaintiff asserts her testimony of how the WVPD officers treated her and the affidavits of Susan Kelley and Pam Bradley regarding the statements made by the WVPD to Plaintiff create a fact issue regarding whether the WVPD acted with discriminatory intent. Specifically, in this regard, Regina testified that Officer Crawford, the responding officer to the November 3, 2002 incident, told her to shut up, and if she opened her mouth again, he would have Regina's kids taken away from her. Regina testified her mother-in-law and her grandmother-in-law were there when Officer Crawford made the statement.

In addition, Plaintiff asserts the officers responding to the January 31, 2003 incident made Regina leave when Jerod came to the house after their separation despite them having been made aware that family violence had occurred, and this is evidence of animus toward Regina and an intent to treat domestic violence cases less seriously than other cases. Pam Bradley, Regina Kelley's mother, testified in her affidavit that she heard the WVPD tell Regina on January 31, 2003 that if she wanted to stay in the house she could stay with Jerod there, and if she did not want him to stay, she could take the children and leave. She also testified she heard the WVPD tell Regina if she did not quit calling them for domestic violence, they would see that the Department of Human Services

would take her children. Susan Kelley, Jerod's mother, testified in her affidavit that she was at Regina's house of February 10, 2003, and she heard the WVPD tell Regina that if she kept calling the WVPD about domestic violence, the Department of Human Services would take her children. Plaintiff argues this is further evidence of the WVPD's animus toward Regina and of its intentional disregard of protective orders and unequal treatment of domestic violence offenses.

The Court does not agree.  Plaintiff's evidence is not material to the issues before the Court. While the comments may be deemed hurtful toward the Plaintiff, the equal protection claim that is before the Court is based on the alleged discriminatory impact of a policy or custom of Defendants to provide less police protection to victims of domestic assault than other assault victims. The evidence relied upon by Plaintiff is not material on the ultimate issue of whether victims of family violence received less protection than those of other crimes or that Defendants discriminated purposefully with respect to the service of protective orders in domestic violence cases.

Although the affidavits submitted by Plaintiff may be deemed material to Plaintiff's class of one equal protection claim, the Court finds Plaintiff has not presented evidence creating a genuine issue of material fact as to her class of one equal protection claim. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court held that the Equal Protection Clause can give rise to an action on behalf of a "class of one" even when the plaintiff does not allege membership in a protected class or group.  "To state a claim sufficient for relief, a single plaintiff must allege that an illegitimate animus or ill-will motivated her intentionally different treatment from others similarly situated and that no rational basis existed for such treatment."  *Shipp*, 234 F.3d at 916.

"Although no general constitutional police protection exists, the state may not discriminate

in providing such protection." *Id.* The class of one equal protection cases require a plaintiff to "present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id.*, *quoting Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Such an improper motive is critical, and "its absence will defeat an Equal Protection challenge to unequal police protection." *Shipp*, 234 F.3d at 916.

In *Shipp*, the Fifth Circuit reversed the district court's denial of the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and held the defendants were entitled to qualified immunity. Although the Fifth Circuit held the defendants were entitled to qualified immunity against the plaintiff's gender-based Equal Protection complaint regarding the policies, customs, and practices of the sheriff's office toward domestic violence victims, the court addressed whether the plaintiff could allege a class of one equal protection claim. *Id.* The Fifth Circuit remanded the case to the district court to allow the plaintiff to amend her complaint to allege an unequal police protection claim within the framework outlined in *Olech*. *Id.* at 917.

According to the complaint in the *Shipp* case, Dalton Shipp kidnapped Cherie Shipp ("Shipp"), raped her, and shot her in the chest with a 12-gauge shotgun. *Id.* at 916. The attacker's mother, Betty Shipp, worked for the sheriff's office and was the dispatcher who received a telephone call from the victim's mother alerting the sheriff's office that the attacker had kidnapped the victim. *Id.* at 910. Betty Shipp allegedly hung up the telephone without conducting an inquiry into the particulars of the incident, and she did not dispatch information to alert other deputies. *Id.* The Fifth Circuit noted as follows:

> It is undisputed that Betty Shipp's son engaged in reprehensible behavior against her daughter-in-law that finally resulted in law enforcement and judicial intervention. It is not improbable that Betty Shipp developed some animosity against her daughter-in-law during her volatile relationship with Dalton or after Shipp fled when Dalton's escalated abuse prompted criminal charges against him.  If deputy Betty Shipp did foster ill-will against her daughter-in-law that ultimately influenced the level of protection Shipp received from the WPSO, Shipp may be able to establish an unequal police protection claim within the framework elucidated in *Village of Willowbrook v. Olech*.

*Id.* at 916-17.

As noted by the Magistrate Judge, not only did *Shipp* involve a motion to dismiss rather than a summary judgment motion as in this instance, but the situation in *Shipp* is distinguishable from this case.  Here, Plaintiff has failed to "present evidence that the defendant deliberately sought to deprive [her] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id.* at 916.  Viewing the affidavits in the light most favorable to Plaintiff and assuming an officer of the WVPD told Regina Kelley that if she did not quit calling them, the Department of Human Services would take her children, Plaintiff still fails to create a genuine issue of material fact that the WVPD deliberately sought to deprive her of equal protection for reasons of a personal nature unrelated to the duties of the officer's position.  Plaintiff has not presented evidence creating a genuine issue of material fact as to her class of one equal protection claim.

The Court agrees with the Magistrate Judge that the evidence regarding whether Defendants had a policy, practice, or custom that had an adverse disparate impact on female victims of domestic violence is weak at best.  Even assuming Defendants had such a policy, practice, or custom, Plaintiff fails to create a genuine issue of material fact regarding purposeful discrimination by Defendants. Finally, even if the Court were to find the evidence permits the necessary inference of an intent to

discriminate against women, Plaintiff has failed to establish that a discriminatory policy caused her injuries.

The Fifth Circuit "has cautioned that the Equal Protection Clause should not be used to make an end-run around the *DeShaney* principle that there is no constitutional right to state protection for acts carried out by a private actor." *Beltran*, 367 F.3d at 304.  In this instance, Plaintiff has not created a genuine issue of material fact on her equal protection claims.  The Court is of the opinion that the conclusions of the Magistrate Judge are correct.  Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as conclusions of this Court.  Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 97) is **GRANTED**. It is further

**ORDERED** that Plaintiffs' above-entitled and numbered cause of action is **DISMISSED WITH PREJUDICE**.

**SIGNED this 27th day of February, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE